United States District Court
Middle District of Florida
Orlando Division

Blue Designs & Development Group,
LLC (d/b/a "Themed Masters"),
a Florida limited liability company,

    *Plaintiff,*

v.                                                                          CASE NO. 6:25-CV-2226

Themed Entertainment
Association
v.                                                                          JURY TRIAL DEMAND

    *Defendant.*

___

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Blue Designs & Development Group, LLC (d/b/a "Themed Masters") presents this complaint against Defendant Themed Entertainment Association ("TEA") and alleges as follows:

### NATURE OF THE ACTION

1. This is an action to stop a dominant industry trade association, Defendant TEA, from using its power and position to bully one of its own members, stifle innovation, and monopolize the basic vocabulary of the very industry it purports to serve. Plaintiff, Themed Masters, is a relatively new B2B digital marketplace founded in good faith by an industry veteran to fill a need in the themed entertainment community. Defendant has engaged in a bad-faith campaign to shut Plaintiff down, including defensively filing a pretextual trademark

application for an honorific title and immediately threatening Plaintiff with baseless claims of infringement. Plaintiff seeks an declaration from this Court that it has done nothing wrong and an injunction to end Defendant's anticompetitive harassment.

## PARTIES

2.  Plaintiff Themed Masters is a limited liability corporation organized and existing under the laws of the state of Florida with its principal place of business at Seminole County.

3.  Upon information and belief, Defendant is a non-profit corporation organized and existing under the laws of the state of Delaware with a principal place of business at 303 N Glenoaks Blvd Suite 200 Burbank, CA 91502.

## JURISDICTION AND VENUE

4.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Trademarks and Unfair Competition), as this is an action for a declaratory judgment arising under the Trademark Laws of the United States, 15 U.S.C. §1125, et seq. (the "Lanham Act"), and 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act).

5.  An actual, substantial, and immediate justiciable controversy exists between the parties.

6.  Defendant's repeated and explicit threats of litigation, including its cease-and-desist letters dated October 16, 2025, and November 11, 2025, which were

directed at Plaintiff, have created a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

7. This Court has specific personal jurisdiction over Defendant. Upon information and belief, Defendant has sufficient minimum contacts with the state of Florida and has purposefully directed its activities at this Judicial District. These contacts include, but are not limited to: (a) regularly soliciting and servicing members for its association within this District; and (b) intentionally directing its cease-and-desist letters and false accusations of trademark infringement at Plaintiff, a Florida corporation, with the express purpose of interfering with Plaintiff's business located in this District.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. Specifically, Plaintiff received Defendant's baseless threats in this District, and the chilling effect and injury to Plaintiff's business are being felt in this District.

## FACTS

**A.    Themed Entertainment Industry**

9. The phrase "themed entertainment" is a widely recognized, descriptive, and industry-standard term of art.

10. Themed entertainment refers to the distinct profession and global industry focused on the conception, design, and creation of immersive guest experiences,

such as theme parks, attractions, museums, live events, and exhibits, where a central narrative or "theme" guides the execution of the environment.

11.     The term "themed" is a basic, common vocabulary used daily by professionals, including Defendant, to describe this field.

12.     The terms "themed" and "themed entertainment" is basic, common vocabulary used daily by professionals, including Defendant, to describe this field.

13.     Professionals, publications, and academics in this multi-billion-dollar industry—including Defendant's own members—routinely and necessarily use the phrase "themed entertainment" in a purely descriptive, non-trademark manner.

14.     For example, individuals describe their professional roles ("themed entertainment designer"), companies describe their services ("themed entertainment fabrication"), and universities promote their curricula ("themed entertainment design program").

15.     Defendant itself, Themed Entertainment Association, was formed and named to identify the service it provides (an "association") for the specific industry it serves (the "themed entertainment" industry).

16.     The phrase "themed" is an essential signifier for the field and is incapable of exclusive appropriation by any single party, including a trade association purporting to represent that field.

B.    **Founding of Themed Masters**

17.    Amy Avalos, the founder of Themed Masters, is a long-term themed entertainment industry professional.

18.    Ms. Avalos and Themed Masters are members in good standing of Defendant Themed Entertainment Association ("TEA").

19.    From her years of direct experience in the industry, Ms. Avalos identified a critical and persistent market inefficiency: project developers, venue owners, and studio creatives frequently struggled to find and vet qualified, specialty vendors and freelance professionals, often under immense project deadlines.

20.    Likewise, many of the industry's most talented creatives and skilled vendors had no central, efficient, or year-round digital platform to promote their specific services to a global audience, particularly if they lacked the time or resources to attend periodic, in-person trade shows or networking events.

21.    To solve this problem and bridge the gap, Ms. Avalos founded Themed Masters.

22.    On or about March 2025, and after some digital brainstorming, Ms. Avalos selected "Themed Masters" name in good faith.

23.    Ms. Avalos settled on "Themed Masters" to describe its mission: to be a digital hub ("Masters") for the "themed" entertainment industry.

24.    Ms. Avalos purchased ThemedMasters.com domain name on or about March 10, 2025 and launched the platform soon after.

25.     Themed Masters is a sophisticated, interactive B2B digital marketplace.

26.     Themed Masters is a curated directory and cross-collaborative digital hub built specifically to connect the design and development segment of the themed entertainment community.

27.     Plaintiff's service is functionally distinct from the services offered by Defendant.

28.     Plaintiff does not operate as a trade association, does not host networking events, and does not conduct annual expos.

29.     Instead, Plaintiff operates a year-round, digital B2B marketplace that allows project leaders to find the exact talent or specialty services they need, while offering vendors and creatives a dedicated platform to be seen, supported, and connected with new opportunities.

C.     **Defendant Themed Entertainment Association**

30.     Defendant, Themed Entertainment Association ("TEA"), is, upon information and belief, a non-profit corporation operating as a trade association.

31.     Upon information and belief, Defendant has been using its name in commerce since at least 1992.

32.     Defendant provides traditional association services to professionals in the themed entertainment field, which include, but are not limited to, providing networking opportunities, arranging and conducting trade show exhibitions, publishing newsletters, and administering an annual awards program.

33. Defendant's chosen name, "Themed Entertainment Association," is the textbook definition of a descriptive name, as it does nothing more than identify the type of service it provides (an "association") for the specific industry it purports to serve (the "themed entertainment" industry).

34. Upon information and belief, each year, a select few individuals are honored as "TEA Masters".

35. Defendant's own website, which describes the "TEA Masters of Their Craft program" as a system to "recognize exceptional individuals" and "honor" them for their contributions. (A printout of Tea Masters website, https://www.teaconnect.org/tea-masters, accessed on Nov. 14, 2025, is attached here as Exhibit A).

36. The website explains that "Each year, a select few are honored as TEA Masters" after meeting extensive "Qualification Criteria," such as a "20+ year career."

37. Defendant refers to the selected individuals as TEA Masters.

38. Defendant's use of "TEA MASTERS" is limited to this non-trademark, honorific function, bestowing a title upon recognized professionals.

39. Trademark symbol ("™") does not appear in anywhere in relation to TEA masters honorific.

7

D.     **Defendant's Asserted Trademark Registration and Application**

    1.     **Trademark Registration No. 5,684,081 for "THEMED ENTERTAINMENT ASSOCIATION"**

40.    Upon information and belief, Defendant is the owner of U.S. Trademark Registration No. 5,684,081 (the "'081 Registration") for the mark THEMED ENTERTAINMENT ASSOCIATION, registered on February 26, 2019.

41.    The '081 Registration claims services in Class 35 for "Association services, namely, promoting the interests of creators, developers, designers and producers of out of home visitor attractions and experiences and the themed entertainment industry; arranging and conducting trade show exhibitions in the field of the themed entertainment industry."

42.    The '081 Registration claims services in Class 41 for "Educational services, namely, arranging and conducting educational conferences, seminars, classes, roundtable discussions, panel discussions, workshops and symposia in the field of themed entertainment and attraction development; providing recognition and incentives by the way of awards to demonstrate excellence in the field of themed entertainment and attraction development."

43.    During the prosecution of this mark, the U.S. Patent and Trademark Office ("USPTO") issued an Office Action rejecting the mark as "merely descriptive."

44.    To overcome this rejection, Defendant abandoned any claim that its name was inherently distinctive.

8

45. Defendant submitted a claim under Trademark Act § 2(f), asserting that the mark had "acquired distinctiveness" through "substantially exclusive and continuous use… for at least the five years" preceding the claim.

46. Defendant's own actions in procuring this registration serve as an admission that its name is merely descriptive of the services it offers.

### 2. Trademark Application Serial No. 99,434,785 for "TEA MASTERS" Filed After Plaintiff Started Its Business

47. Upon information and belief, Defendant is also the owner of U.S. Trademark Application Serial No. 99,434,785 (the "'785 Application") for the mark TEA MASTERS.

48. This application was filed on October 9, 2025.

49. TEA MASTERS is not yet registered.

50. It is, upon information and belief, a bad-faith, defensive filing lodged only after Defendant became aware of Themed Masters' legitimate business.

51. The application claims services in Class 41 related to "Educational services, namely, providing incentives to artists, creatives, writers, producers, project managers, engineers, and craftspeople to demonstrate excellence in the field of themed entertainment, creative services and attraction development; Educational services, namely, providing incentives to artists, creatives, writers, producers, project managers, engineers, and craftspeople to demonstrate excellence in the

field of themed entertainment, creative services and attraction development through the issuance of awards."

52. Defendant does not use ™ designation in relation to TEA MASTERS on its website as of the date of this filing. *See* Exhibit A.

53. Upon information and belief, Defendant does not use ™ designation in relation to TEA MASTERS in any context.

54. Upon information and belief, Defendant never considered TEA MASTERS as a source designation.

55. TEA MASTERS is a descriptive, laudatory title for a recognition program, akin to an "employee of the month" or "fellowship" honorific.

**E.     Defendant's Awareness Of Themed Masters**

56. On July, 2025, Ms. Avalos has submitted a post on one of Defendant's community pages.

57. This post introduced Themed Masters, and was intended to share a new industry resource that she thought might be helpful to Defendant's members.

58. Upon information and belief, on or about July 31, 2025, Melissa Oviedo sent a message to Ms. Avalos stating that she would delete the post. (A copy of Themed Masters post and Ms. Oviedo's message is attached here as Exhibit B).

59. Upon information and belief, Ms. Oviedo is the chief executive officer of Themed Entertainment Association.

60. Upon information and belief, Defendant's other members were and continue to be allowed to share information about their products and services.

61. Ms. Avalos's subsequent posts to the community were also removed.

62. On or about October 16, 2025, Defendant sent a cease-and-desist letter to Themed Masters. A copy of the October 16 Letter is attached here as Exhibit C.

63. The October 16, 2025 letter was sent a mere seven (7) days after Defendant filed its '785 Application for TEA MASTERS.

64. In the October 16 letter, Defendant accused Themed Masters of infringing Defendant's '081 Registration, and the TEA MASTERS honorific.

65. In October 16 letter, Defendant demanded that Themed Masters cease use of the THEMED MASTERS name within two (2) weeks.

66. On or about October 23, 2025, Defendant also shared an edited email as purported evidence of confusion.

67. On October 30, 2025, Themed Masters, through its undersigned counsel, responded to Defendant's letter and disputed the allegations. A copy of the October 30 Letter is attached here as Exhibit D.

68. On November 11, 2025, Defendant sent a second letter. A copy of the November 11 Letter is attached here as Exhibit E.

69. Upon information and belief, the signatory of the November 11 letter is Defendant's litigation counsel, who once again threatening litigation.

11

70.　Defendant's threat of litigation in addition to the facts alleged, under all circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### COUNT I: DECLARATORY JUDGMENT OF NO INFRINGEMENT OF '081 REGISTRATION (THEMED ENTERTAINMENT ASSOCIATION)

71.　Plaintiff repeats and realleges the allegations of Paragraphs 1–70.

72.　This is a declaratory judgment action under the Trademark Laws of the United States, 15 U.S.C. § 1051 et. seq., the Lanham Act, 15 U.S.C. § 1125 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate litigation and demand to cease and desist from the use of the wording "Themed Masters", Plaintiff seeks relief from this Court.

73.　Plaintiff's use of THEMED MASTERS does not create a likelihood of confusion with Defendant's THEMED ENTERTAINMENT ASSOCIATION mark.

74.　No likelihood of confusion exists at least because of the following reasons.

75.　The marks, when viewed in their entireties, are visually, aurally, and conceptually dissimilar.

76.　Plaintiff's sophisticated B2B digital marketplace services are fundamentally distinct from Defendant's association and trade show services.

77. Defendant's '081 mark is merely descriptive, commercially weak, and entitled only to the narrowest possible scope of protection, as admitted by Defendant during the mark's prosecution.

78. The relevant consumers are highly sophisticated industry professionals who exercise a high degree of care and are not likely to be confused.

79. Plaintiff is entitled to a declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing U.S. Trademark Reg. No. 5,684,081 for the mark THEMED ENTERTAINMENT ASSOCIATION owned by Defendant relating to its association and entertainment services for the themed entertainment industry.

### COUNT II: DECLARATORY JUDGMENT OF NO COMMON LAW RIGHTS (TEA MASTERS)

80. Plaintiff repeats and realleges the allegations of Paragraphs 1–79.

81. This is a declaratory judgment action under the Trademark Laws of the United States, 15 U.S.C. § 1051 et. seq., the Lanham Act, 15 U.S.C. § 1125 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate litigation and demand to cease and desist from the use of the wording "Themed Masters", Plaintiff seeks relief from this Court.

82. Defendant used TEA MASTERS as a laudatory honorific.

83. Defendant has not used TEA MASTERS as a source identifier.

84. TEA MASTERS is an honorific descriptive of the recipients.

85. Plaintiff is entitled to a declaratory judgment that Defendant's "TEA MASTERS" term is a descriptive, laudatory honorific that fails to function as a trademark, and that as a result, Defendant possesses no common law trademark rights or other proprietary, protectable interest in the "TEA MASTERS" term.

### COUNT III: DECLARATORY JUDGMENT OF NO INFRINGEMENT (TEA MASTERS)

86. Plaintiff repeats and realleges the allegations of Paragraphs 1–85.

87. This is a declaratory judgment action under the Lanham Act, 15 U.S.C. § 1125 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate litigation and demand to cease and desist from the use of the wording "Themed Masters", Plaintiff seeks relief from this Court.

88. Even if Defendant is found to possess some protectable trademark right in "TEA MASTERS" (which Plaintiff denies), Plaintiff's use of THEMED MASTERS does not create a likelihood of confusion.

89. No likelihood of confusion exists at least because of the following reasons.

90. The dominant and sole source-identifying portion of Defendant's alleged mark is its house mark and acronym "TEA," which is entirely absent from Plaintiff's mark.

91. Plaintiff's services are dissimilar to Defendant's services.

92. The relevant consumers of both parties are sophisticated.

93. In the event that Defendant is found to acquire any trademark rights in TEA MASTERS honorific, Plaintiff is entitled to a declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing any rights in the mark TEA MASTERS.

## DECLARATORY JUDGMENT OF AN EXCEPTIONAL CASE

94. Plaintiff repeats and realleges the allegations of Paragraphs 1–92.

95. Defendant's actions constitute an "exceptional case" within the meaning of the Lanham Act, 15 U.S.C. § 1117(a).

96. Defendant's conduct is exceptional because it is willful, taken in bad faith, and designed to stifle a good-faith member of the industry in an attempt to monopolize the use of industry descriptive term.

97. This bad faith is evidenced at least by: (a) Defendant's bad-faith, defensive filing of the '785 Application for a non-trademark honorific *after* learning of Plaintiff's business and *days* before threatening litigation; (b) Defendant's selective and anticompetitive enforcement of its alleged rights against Plaintiff while permitting other members to promote their services; and (c) Defendant's continued assertion of objectively baseless and harassing infringement allegations through litigation counsel.

98. Plaintiff is therefore entitled to a declaration that this is an exceptional case and an award for its reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

    Plaintiff demands judgment as follows:

1. An order declaring that:

   a. Plaintiff's use of THEMED MASTERS mark does not infringe Defendant's THEMED ENTERTAINMENT ASSOCIATION mark;

   b. Defendant's TEA MASTERS honorific is not entitled trademark protection;

   c. Plaintiff's use of THEMED MASTERS mark does not infringe Defendant's TEA MASTERS honorific;

2. An injunction to prohibit Defendant from interfering with Plaintiff's services and further use of the THEMED MASTERS mark;

3. An Order declaring this to be an exceptional case under 15 U.S.C. § 1117(a) and awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action;

4. Such other relief as the Court finds appropriate.

**DEMAND FOR JURY TRIAL**

    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated: 11/19/25                        Respectfully Submitted,

                                            */s/Ismail Cem Kuru*
                                            Ismail Cem Kuru (Lead Counsel)
                                            IL Bar No. 6324206
                                            (*Motion for Special Admission to be filed*)

>Chicago, IL
>On behalf of: Wilson Dutra Innovation Law
>(904) 955-9347
>ckuru@wilsondutra.com
>
>Fernando A. Dutra
>Fla. Bar No. 0110354
>Wilson Dutra Innovation Law
>7643 Gate Parkway, Suite 10489
>Jacksonville, FL 32256
>(904) 955-1977
>fdutra@wilsondutra.com
>cc: trademarks@wilsondutra.com
>
>*Attorneys for Plaintiff*
>*Blue Designs & Development Group, LLC*
>*(d/b/a "Themed Masters"),*